UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 19-MJ-03817-TORRES

IN THE MATTER OF
SEALED CRIMINAL COMPLAINT
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   __Yes  X  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __Yes  X  No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
Daniel J. Marcet
Assistant United States Attorney
Fla. Bar No. 0114104
11200 NW 20th St
Miami, Florida
Tel: (305) 715-7642
Daniel.Marcet@USDOJ.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>LESTER ARGUELLES, AMIL GONZALEZ RODRIGUEZ, ISMAEL GARCIA, MIGUEL MARTIN LUGO, and ERNESTO RIVERO PEREZ,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 19-MJ-03817-TORRES<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 2019 to November 12, 2019  in the county of     Miami-Dade     in the

   Southern    District of    Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Five Kilograms or More of Cocaine |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Kelly A. Hunt, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Nov. 12, 2019

*Judge's signature*

City and state:          Miami, Florida                 Edwin G. Torres, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelly A. Hunt, being duly sworn, depose and state as follows:

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice, currently assigned to the Miami, Florida, Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1), including but not limited to, offenses involving the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotics or other dangerous drugs, as enumerated in Title 18, United States Code, Section 2516(1)(e).

2. I have been a Special Agent with the FBI since June 2016. As a Special Agent with the FBI, I have participated in numerous narcotics investigations and arrests for violations of Title 21, United States Code. These investigations have involved debriefing defendants, witnesses, and informants, conducting surveillance, assisting in court-ordered interceptions, executing search warrants, seizing narcotics and narcotics-related assets, and making arrests for narcotics-related offenses. As a result of my law enforcement experiences, I am familiar with the manner in which various types of illegal drugs are cultivated, manufactured, distributed, or diverted, as well as the methods used to finance drug transactions and launder proceeds.

3. This affidavit is submitted in support of a complaint for the arrest of Lester ARGUELLES, Amil GONZALEZ RODRIGUEZ, Ismael GARCIA, Miguel MARTIN LUGO, and Ernesto RIVERO PEREZ for conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. 846.

4. The facts listed in this affidavit are known personally to me, or have been

provided to me by other law enforcement officers participating in the investigation. The affidavit is provided solely for the purpose of establishing probable cause to arrest ARGUELLES, GONZALEZ RODRIGUEZ, GARCIA, MARTIN LUGO, and RIVERO PEREZ. Accordingly, this affidavit does not contain all of the facts known to me and other law enforcement concerning this investigation.

5. As part of an on-going investigation, law enforcement identified ARGUELLES, GARCIA, GONZALEZ RODRIGUEZ, and RIVERO PEREZ and others as participants in drug trafficking activities. To date, the investigation has involved the use of surveillance, controlled evidence purchases by an Undercover Officer (hereinafter UCO) and/or a confidential human source (CHS), subpoenas, toll analysis, cellular tracking warrants, three federal court orders permitting the real-time interception of wire and electronic communications, among other investigative techniques. Law enforcement believes MARTIN supplies cocaine to Jose Luis PEREZ who coordinates the transportation of cocaine from McAllen, Texas, to Miami, Florida utilizing tractor trailers. RIVERO PEREZ is believed to transport the cocaine in a hidden compartment in a tractor trailer. Once the cocaine arrives in Miami, Florida, Jose PEREZ distributes at least a portion of the cocaine to ARGUELLES who in turn distributes a portion of the cocaine to GONZALEZ RODRIGUEZ. At times, GARCIA and GONZALEZ RODRIGUEZ are also alternative sources of supply of cocaine for ARGUELLES. All conversations were in the Spanish language and have been translated to English.

6. On September 13, 2019, at approximately 12:40 p.m., ARGUELLES placed an outgoing telephone call to AMIL GONZALEZ RODRIGUEZ. A portion of the conversation is detailed below:

ARGUELLES: I'm going, I'm going to do that now and then I'll drop by. Are you there?

2

> GONZALEZ RODRIGUEZ: Yes, come over here, pick me up and we go together.
>
> ARGUELLES: Bring me, bring me, what's its name? See if you can lend me six?
>
> GONZALEZ RODRIGUEZ: Yes, no problem.
>
> ARGUELLES: For the family.
>
> GONZALEZ RODRIGUEZ: No problem.
>
> ARGUELLES: Of the same thing.
>
> GONZALEZ RODRIGUEZ: [*Coughs*]
>
> ARGUELLES: I'm going from here to there. I'll be there in about thirty minutes or less.

7. During the preceding conversation, ARGUELLES told GONZALEZ RODRIGUEZ to "[s]ee if you can lend me six," referencing six ounces of cocaine, to which GONZALEZ RODRIGUEZ agreed. Further, ARGUELLES told GONZALEZ RODRIGUEZ that the cocaine was "for the family," referencing his cocaine customers. ARGUELLES then told GONZALEZ RODRIGUEZ that it was ounce quantities when he stated, "The same thing." ARGUELLES ended the conversation by telling GONZALEZ RODRIGUEZ he would be at his house in thirty minutes. In addition to the language used in the above telephone call, law enforcement believes this telephone call was used to place an order for cocaine with GONZALEZ RODRIGUEZ, one of ARGUELLES' sources of supply, due to two previous telephone calls with an unknown male and a UCO. Although not explicitly stated during the conversation with the UCO, the UCO has regularly purchased approximately four ounces of cocaine from ARGUELLES. Law enforcement believes an unknown male ordered a quantity of cocaine, believed to be two ounces, from ARGUELLES; thus, ARGUELLES ordered six ounces from GONZALEZ RODRIGUEZ in order to supply both the unknown male and the UCO with cocaine.

3

8.      On September 15, 2019, at approximately 1:24 p.m., ARGUELLES received an incoming text message from the UCO. The message stated, in Spanish, "Papi voy pa la zona en par de horas. Estas listo pa mi?" ARGUELLES responded, "Si." During this conversation, the UCO told ARGUELLES, in Spanish, "Papi I am going to be in the area in a couple of hours. Are you ready for me?" ARGUELLES replied "yes." At approximately 1:30 p.m., ARGUELLES placed an outgoing telephone call to GARCIA. A portion of the conversation is detailed below:

> ARGUELLES: Hey, can you bring me one and a half in a little bit. Somebody is coming to pick it up.
>
> GARCIA: What time, more or less? Because I'm now...
>
> ARGUELLES: Like in about one hour, more or less.
>
> GARCIA: Okay, that's fine. [*Voices overlap*]
>
> ARGUELLES: But confirm with me- [*Voices overlap*]
>
> GARCIA: [*Unintelligible*] [*Voices overlap*]
>
> ARGUELLES: -because I already told him to come over.
>
> GARCIA: [*Unintelligible*] [*Audio Glitch*]
>
> ARGUELLES: Tell me if you can because so that I, so that I—because I told the people to come over.
>
> GARCIA: Of course, buddy.
>
> ARGUELLES: Okay, one hour.
>
> GARCIA: Okay.
>
> ARGUELLES: Okay, that will be give and take when I see him.
>
> GARCIA: Okay.

9.      During the preceding telephone conversation, ARGUELLES asked GARCIA for one and a half ounces of cocaine and stated that his buyer was coming to purchase the cocaine.

4

GARCIA asked at what time he should drop off the cocaine and ARGUELLES responded, "Like in about one hour, more or less." ARGUELLES further insisted that GARCIA confirm with him what time he would drop off the cocaine, "because I told the guy to come over," referring to the UCO. GARCIA agreed to go to ARGUELLES' residence in approximately one hour to drop off the cocaine.

10. On September 15, 2019, at approximately 2:31 p.m., law enforcement observed ISMAEL GARCIA arrive at ARGUELLES residence. At approximately 2:32 p.m., ARGUELLES received an incoming telephone call from GARCIA. The following conversation ensued:

ARGUELLES: Go ahead.

GARCIA: I'm here.

ARGUELLES: I'm coming.

11. During the preceding telephone conversation, GARCIA told ARGUELLES that he was at ARGUELLES' house. Law enforcement observed GARCIA and ARGUELLES meet in front of ARGUELLES residence.

12. On September 15, 2019, at approximately 3:07 p.m., ARGUELLES received an incoming telephone call from the UCO. During the conversation, the UCO stated, "hey, I'll be there in about ten minutes," referring to the meeting location where they would conduct the narcotics transaction.

13. On September 15, 2019, at approximately 3:10 p.m., ARGUELLES placed an outgoing telephone call to GARCIA. A portion of the conversation is detailed below:

ARGUELLES: Dude, two grams are missing here.

GARCIA: No, I don't believe you.

5

ARGUELLES: Yes dude.

GARCIA: Dude, that, look, I get that-[*Voices overlap*]

ARGUELLES: I divided one and when I do the other it gives me twelve grams

GARCIA: Fuck, look, that had uh, four. It [*Stutters*] had [*Voices overlap*]

ARGUELLES: [*Unintelligible*] [*Voices overlap*]

GARCIA: -in fifteen, four. Two more. [*Voices overlap*]

ARGUELLES: Mandatory you have to check your scale that it's wrong.

GARCIA: Well, I don't know, I don't know, what to tell you—I, I, you know, I put a little plastic, then I zero it and put that on top of it and then [*Unintelligible*] you know?

ARGUELLES: [*Unintelligible*] the guy is on his way over here and I'm weighing and dividing this and saw that amount missing.

GARCIA: Well, I think it is yours the one that's wrong, because listen, [*Unintelligible*] [*Voices overlap*]

ARGUELLES: [*Unintelligible*] [*Voices overlap*]

GARCIA: -it had, look, I put-[*Voices overlap*]

ARGUELLES: If he says something-[*Voices overlap*]

GARCIA: Listen-[*Voices overlap*]

ARGUELLES: If he complains you give it to me and I'll give it to him.

GARCIA: Of course, that's no problem, but listen, [*Stutters*] I put in it two [*Audio Glitch*] because it was fifty-two and I put in it fifty-four.

ARGUELLES: That's it, I'm telling you this just in case it happens.

GARCIA: No, no, no problem. You know there is no problem-[*Voices overlap*]

ARGUELLES: [*Unintelligible*] if he doesn't say anything, he takes it and he pays me now. If he does not call me and says anything, there is no problem. But if he calls me.

GARCIA: Dude, or tell him and I give it to him in a little bit, no problem, you know there is no problem with that.

ARGUELLES: You could, if you want, start heading over here because that-[*Voices overlap*]

GARCIA: No, no way dude, I just got here. No way.

14. During the preceding telephone conversation, ARGUELLES told GARCIA that the cocaine he had just delivered was missing "two grams." ARGUELLES further explained that he was dividing the ounce quantity of cocaine in half and one of the half ounces of cocaine only weighed "twelve grams." GARCIA replied that he was unsure of why that happened as he, "put a little plastic, then I zero it and put that on top of it," referencing putting plastic on top of the scale, zeroing out the scale, and then putting the cocaine on the scale to weigh it. ARGUELLES replied, "the guy is on his way over here," referring to the UCO, "and I'm weighing and dividing this and saw that amount missing." After GARCIA continued to attempt to argue with ARGUELLES about whether the cocaine was the right amount, ARGUELLES told GARCIA that if the UCO doesn't notice that the cocaine is short two grams then everything will be fine. However, if the UCO notices that two grams are missing and calls ARGUELLES, GARCIA will have to deliver two grams to ARGUELLES. GARCIA agreed and suggested that ARGUELLES could tell the UCO that the cocaine had two grams missing and that GARCIA would deliver the two grams at a later time. ARGUELLES then suggested that GARCIA head back to ARGUELLES' residence to deliver the two grams of cocaine to which GARCIA replied, "No, no way dude, I just got here. No way."

15. At approximately 3:19 p.m., the UCO arrived at the meeting location. The UCO exited the UCO's vehicle and entered the front passenger of ARGUELLES' vehicle. ARGUELLES parked the vehicle. The UCO provided $4,000 of U.S. government funds to ARGUELLES. ARGUELLES retrieved a yellow plastic bag and handed it to the UCO. The yellow plastic bag contained five clear plastic bags that contained a white powdery substance.

7

The white powdery substance field tested positive for the presence of cocaine. The weight of the white powdery substance with packaging was approximately 120 grams which did not necessarily indicate that there was an amount missing.

16. On October 30, 2019, at approximately 12:12 p.m., Jose PEREZ placed an outgoing call to MARTIN. The following conversation ensued:

MARTIN: What's up dude?

PEREZ: Hey, what's up? Did you call me?

MARTIN: Yes. Uh... I'm waiting for confirmation on something there. I will probably need the cousin over there on Sunday.

PEREZ: The cousin on Sunday there?

MARTIN: Yes.

PEREZ: Oh... Okay. That's fine.

MARTIN: But I'm still waiting for confirmation because they want to do it all, you know, like the time before.

PEREZ: Yeah, they want to do it huh... the... like the previous time? Okay.

MARTIN: Yes, yes.

PEREZ: Okay. *[Voices overlap]*

17. During the preceding conversation, MARTIN told PEREZ "I'm waiting for confirmation on something there" referring to narcotics trafficking activity. Law enforcement believes that MARTIN told PEREZ that he would need RIVERO PEREZ to arrive at MARTIN's location on Sunday when he stated, "I will probably need the cousin over there on Sunday." During intercepted conversations, PEREZ has referred to RIVERO PEREZ as "cousin." MARTIN further stated, "But I'm still waiting for confirmation because they want to do it all, you know, like the time before." Law enforcement believes that MARTIN was referring to a

8

previous cocaine delivery, when they used two tractor trailers to transport the cocaine.

18. Immediately after the above telephone conversation, at approximately 12:15 p.m., PEREZ placed an outgoing telephone call to a telephone number believed to be used by "J.D." The following conversation ensued:

JD: Hello.

PEREZ: Hey, start looking for... [*Stutters*] for my buddy, the cousin. See if there is something for up there. They are asking for... to load up tomorrow.

JD: Okay, okay, perfect, man.

PEREZ: You heard me?

JD: Okay, hundred percent.

PEREZ: Okay, okay bye.

19. During the preceding conversation, PEREZ told J.D. "...for my buddy, the cousin," a reference to RIVERO PEREZ, "See if there is something for up there..." Law enforcement believes PEREZ asked J.D. to find RIVERO PEREZ a load of cargo to transport to or from Texas.

20. On November 5, 2019, law enforcement observed RIVERO PEREZ depart McAllen, Texas in a tractor truck with an attached trailer. Later that day, the Texas Department of Public Safety conducted a traffic stop on RIVERO PEREZ's vehicle. RIVERO PEREZ consented to a search of the vehicle but no narcotics were located. Law enforcement believes that RIVERO PEREZ's vehicle contained a hidden compartment in one of the mechanical components that was not discovered by law enforcement.

21. On November 7, 2019, based on cell site tracking data, intercepted conversations, as well as the investigation to date, law enforcement set up surveillance in a truck yard in Miami-Dade County in order to observe Jose PEREZ and others conducting a meeting. Law

9

enforcement observed Jose PEREZ arrive at the location and shortly thereafter RIVERO PEREZ arrived. RIVERO PEREZ passed PEREZ two bags. PEREZ placed those bags in the rear seat. PEREZ stayed in the area of the truck yard for some time. PEREZ and RIVERO PEREZ departed. Sometime later, PEREZ and RIVERO PEREZ returned to the truck yard. PEREZ and the male sat in PEREZ's vehicle for some time parked next to RIVERO PEREZ's vehicle. Shortly thereafter, RIVERO PEREZ exited PEREZ's vehicle and PEREZ departed the location. Law enforcement followed PEREZ as he drove from the location to the Southwest Miami area in the general direction of his residence. At approximately 11:11 a.m., law enforcement conducted an investigative stop on PEREZ's vehicle. Upon the stop, PEREZ began to exit the vehicle as a law enforcement officer approached. PEREZ was directed to a second officer on scene. At that same time, the approaching officer opened the rear driver door of PEREZ's dual cab truck. The officer observed, in plain view, a black canvas bag which was partially opened. Through that opening, the officer observed rectangular packages wrapped in tape which he believed, based on his training and experience, were kilograms of narcotics. A search of the bag revealed approximately 30 rectangular and square packages of which 14 were sized in kilogram quantity packages. One of the packages was opened and contained a white substance which field tested positive for the presence of cocaine.

[THIS SPACE INTENTIONALLY LEFT BLANK]

22.     Based on these facts, there is probable cause to believe that, from September 2019 to November 2019, in Miami Dade County, in the Southern District of Florida, ARGUELLES, GONZALEZ RODRIGUEZ, GARCIA, MARTIN, and RIVERO PEREZ did knowingly conspire to distribute cocaine, in violation of 21 U.S.C. § 846 .

**FURTHER YOUR AFFIANT SAYETH NAUGHT**.

_____
Kelly Hunt, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this /2 day of November, 2019, in Miami, Florida.

_____
HONORABLE EDWIN G. TORRES
UNITED STATES MAGISTRATE JUDGE

11